568 F.3d 61 (2009)
Esperanza GUZMAN, Petitioner,
v.
Eric H. HOLDER Jr., Attorney General of the United States,[1] Respondent.
Docket No. 08-2544-ag.
United States Court of Appeals, Second Circuit.
Submitted: April 24, 2009.
Decided: June 2, 2009.
Thomas E. Moseley, Newark, N.J., for Petitioner.
Katherine E. Clark, Trial Attorney, Office of Immigration Litigation (Barry J. Pettinato, Office of Immigration Litigation, and Gregory G. Katsas, Acting Assistant Attorney General, Civil Division, on the brief), United States Department of Justice, Washington, D.C., for Respondent.
Before: CALABRESI, KATZMANN, Circuit Judges, and EATON, Judge.[2]
PER CURIAM:
Petitioner appeals the BIA's denial of cancellation of removal and finding of removeability. We assume the parties' familiarity with the facts of the case, its procedural history, and the scope of the issues on appeal.

*62 I. Cancellation of Removal
Petitioner contends that the BIA erred when it overruled the Immigration Judge's decision and denied cancellation of removal. Petitioner makes two arguments. First, Petitioner claims that although the BIA described its decision as a discretionary weighing of the equities, the decision in reality was a denial of eligibility based on the conclusion that Petitioner committed a sex crime. Second, Petitioner argues that the BIA, by relying upon facts not found by the IJ, violated its own regulations.
The BIA's decision fairly purported to "balance the adverse factors evidencing the alien's undesirability as a permanent resident with the social and humane considerations presented in his (or her) behalf to determine whether the granting of ... relief appears in the best interest of this country." In Re C-V-T, 22 I. & N. Dec. 7, 11 (BIA 1998) (alteration in original) (internal quotation marks omitted). A purely discretionary weighing of positive and negative factors is not a decision over which we have jurisdiction.[3]See 8 U.S.C. § 1252(a)(2)(B)(i); De La Vega v. Gonzales, 436 F.3d 141, 143-44 (2d Cir.2006); Rodriguez v. Gonzales, 451 F.3d 60, 62 (2d Cir.2006) (per curiam); Sepulveda v. Gonzales, 407 F.3d 59, 62-63 (2d Cir.2005); see also INS v. St. Cyr, 533 U.S. 289, 307, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (recognizing the traditional distinction "between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand").
We do, however, have jurisdiction to review any genuine "constitutional claims or questions of law" that Petitioner asserts. 8 U.S.C. § 1252(a)(2)(D). Petitioner argues that the BIA failed to follow its own regulations and hence made a legal error by making its own factual findings concerning Petitioner's crime. Prior to 2002, the BIA reviewed IJs' factual findings de novo and could engage in its own independent fact-finding. For more recent appeals, however, 8 C.F.R. § 1003.1(d)(3)(i) and (iv) apply. Under 8 C.F.R. § 1003. 1(d)(3)(i), the BIA must defer to the IJ's factual findings, and may only overturn those findings if they are clearly erroneous.[4] And, under 8 C.F.R. § 1003.1(d)(3)(iv), the BIA is prohibited from engaging in its own independent factfinding.
In the case before us, the BIA violated 8 C.F.R. § 1003.1(d)(3)(iv) by engaging in such factfinding. The IJ stated that the "account[s] of [Petitioner's] offense conduct contained in the complaint and in the pre-sentence report (`PSR') are consistent with each other and contain very serious allegations." The IJ also stated, however, that Petitioner had offered many different reasons to doubt the account of Petitioner's offense in the complaint and PSR. The IJ went on to point out why, as our court has described it, see Dickson v. Ashcroft, 346 F.3d 44, 54 (2d Cir.2003), factual accounts in New York PSRs may be unreliable.[5] The IJ then *63 concluded that "[t]he record does not conclusively establish that Respondent committed the crime alleged in the complaint and PSR."
The BIA noted the account contained in the PSR and other supporting documents, noted also that Petitioner denied that account, and then stated that these records were the best evidence it had of the particular crime committed. The BIA then found "that the ... criminal conviction is very serious," and that "the ... serious criminal conviction, failure to accept responsibility for his actions, and failure to provide any evidence of rehabilitation outweigh the favorable factors presented in this case." One judge on the three-member BIA panel dissented. The dissenting judge pointed out that while "[t]he majority's disposition of the case is appropriate on the assumption that [Petitioner] committed the sodomy offense[,] ... [Petitioner] was not convicted on that charge and... offered meaningful evidence of actual innocence and an explanation of why he pled to a lesser charge." The dissenter observed that "[t]he Immigration Judge's only finding on this critical fact issue was that the record does not `conclusively establish' [Petitioner's] commission of the crime in the original charges." The dissenter added that "[t]he Immigration Judge needs to make a more specific finding as to whether the respondent committed the crime as originally charged" for the BIA to rely on that crime in any decisionmaking.
In light of this record, we believe that the BIA engaged in impermissible factfinding. The BIA's description of a crime that a petitioner has committed as "serious" is not factfinding. But in the instant case, the BIA based its seriousness determination on the facts asserted in the PSR and relied on the further "fact" that Petitioner had not accepted responsibility for the crime described in the complaint against him. While that could, in some instances, simply be "a review of the factual record by the BIA," Wallace v. Gonzales, 463 F.3d 135, 141 (2d Cir.2006), that is not the case here because the BIA necessarily relied on facts that were contested by the parties and expressly not found by the IJ. There were competing accounts in the record of the crime to which Petitioner pled, the PSR and Petitioner's statements (which were never determined not to be credible). The BIA, in contrast with the IJ, relied on one of these accounts, thereby essentially making its own finding as to the nature of the crime. The BIA, therefore, violated 8 C.F.R. § 1003.1(d)(3)(iv).

II. Removeability
When the Government appealed the IJ's cancellation of removal to the BIA, Petitioner argued to the BIA that he was not removeable at all. The BIA never addressed this argument. On appeal to us, Petitioner raises the argument again. Because the BIA never addressed that issue and because the BIA decision must be vacated, it would be improper for us to determine that issue now. But we observe, in passing, that while Petitioner was found removable for a "crime of child abuse," INA § 237(a)(2)(E)(i), 8 U.S.C. *64 § 1227(a)(2)(E)(i), there is some question as to whether Petitioner's conviction under New York Penal Law § 260.10 necessarily encompassed a conviction for a "crime of child abuse," see People v. Johnson, 95 N.Y.2d 368, 718 N.Y.S.2d 1, 740 N.E.2d 1075, 1076 (2000) (discussing the breadth of New York Penal Law § 260.10); In Re Velazquez-Herrera, 24 I. & N. Dec. 503 (BIA 2008) (interpreting "crime of child abuse"), and how the categorical approach applies to such a conviction, see James v. Mukasey, 522 F.3d 250, 256 (2d Cir.2008) (leaving open the possibility that New York Penal Law § 260.10 might be divisible and therefore subject to the modified categorical approach).

III. Conclusion
Because the BIA engaged in factfinding in violation of its own regulations, we GRANT the petition for review and REMAND the case for further consideration.
NOTES
[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder Jr., is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case. The Clerk of the Court is instructed to amend the caption accordingly.
[2] Judge Richard K. Eaton of the United States Court of International Trade, sitting by designation.
[3] We, of course, have jurisdiction to determine whether, in the circumstances of a given case, the BIA engaged in a purely discretionary determination or if it instead actually decided that a petitioner had committed acts that rendered him ineligible for cancellation of removal.
[4] Merely stating that an IJ's finding was "clearly erroneous" is not enough, moreover. Rather, the BIA's review of the IJ cannot be an independent assessment but must show appropriate deference to the IJ's finding. See Fen Yong Chen v. Bureau of Citizenship & Immigration Servs., 470 F.3d 509, 515 (2d Cir.2006).
[5] In Dickson, we observed that "[b]ecause the factual narratives contained in [a New York] PSR are prepared by a probation officer on the basis of interviews with prosecuting attorneys, police officers, law enforcement agents, etc., they may well be inaccurate." 346 F.3d at 54. We expressed concern that factual narratives in PSRs "may include allegations that were not proven at trial, as well as alleged facts that would have been inadmissible at trial had the prosecution attempted to present them." Id. We concluded that a PSR's "narrative is not a highly reliable basis for a decision of such importance," as whether an immigrant is to be removed from the country. Id; see also Hili v. Sciarrotta, 140 F.3d 210, 216 (2d Cir. 1998) (noting that the inclusion of hearsay statements and inaccurate information in a PSR is "virtually inevitable").